JANUARY TERM, 1882, No. 275.        MARCH 28TH, 1882.

## Patton *versus* Patton *et al.*

A husband, " for himself, his executors and administrators," covenanted with his wife to suffer her to live separate and apart from him. In a later clause, the agreement provided that he " will allow her for her support the sum of four hundred dollars per annum, to be paid quarterly in advance." In his will, the husband devised and bequeathed certain real and personal estate to his executors, " to carry into effect the provisions of a certain agreement made between me and my wife, which agreement is in writing." *Held,* that the agreement was a personal contract, not binding on the executors of the husband.

Before SHARSWOOD, C. J.; MERCUR, GORDON, PAXSON, TRUNKEY, STERRETT, and GREEN, JJ.

Error to the Court of Common Pleas, No. 4, of *Philadelphia County.*

Covenant by Maria Patton, widow of William Patton, deceased, against Robert R. Patton and Eliza Patton, executors of the last will and testament of the said William Patton.

On the trial in the Court below, the following facts appeared :

On the 1st day of October, 1867, William Patton and his wife Maria Patton entered into an agreement of separation under seal, to which agreement one Holmes B. Kelly was a party. The agreement provided, " That the said William Patton, in pursuance of his aforesaid agreement, doth hereby for himself, his executors, and administrators, and for every of them, covenant, promise, and agree to and with the said Maria Patton, his wife, in manner and form following: that is to say, that it shall and may be lawful to and for the said Maria Patton, his wife, and that he, the said William Patton, shall and will permit and suffer her, the said Maria, from time to time, and from all times hereafter during her natural life, to live separate and apart from him, and to reside and be in such place and in such family and families, and with such relatives and friends and other persons, and to follow and carry on such trade and business as she, the said Maria Patton, from time to time, at her will and pleasure, notwithstanding her present coverture (and as if she was a feme sole and unmarried) shall think fit; and that he, the said William Patton, shall not nor will at any time or times hereafter sue her, the said Maria, in any court for living separate and apart from him to compel her to cohabit with him, or sue or molest, disturb or trouble any person or persons whomsoever for receiving, harboring, or entertaining her. Nor shall nor will,

without the consent of the said Maria, visit her, or knowingly go into any house or place where she may dwell or be. Nor shall nor will at any time hereafter claim or demand any of the moneys, rings, jewels, plates, clothes, household goods, or stock in trade which she, the said Maria, now hath in her custody, or which she shall or may at any time hereafter buy or purchase, or which shall be devised or given her, or shall otherwise be acquired by her, and that she shall and may enjoy and absolutely dispose of the same as if she was a *feme sole* and unmarried.

" And further, that the said William Patton will allow her for her support the sum of four hundred dollars per annum, to be paid quarterly in advance, the first payment thereof to be made on the first day of October, in the year of our Lord one thousand eight hundred and sixty-seven ; and the said Holmes B. Kelly doth hereby covenant, promise, and agree to and with the said William Patton, that he, the said Kelly, will favor, indemnify and save harmless the said William Patton, of and from any charge for support and maintenance for the said Maria Patton, and also for any debt or debts to be contracted by the said Maria Patton after this date hereof."

This agreement was carried into effect from its date, and Maria Patton always thereafter lived separate and apart from her husband. William Patton died August 3d, 1878, having first made his last will and testament, in which he devised and bequeathed, *inter alia*, as follows :

" I give, devise, and bequeath unto my executors, hereinafter named, and the survivor of them, his or her heirs, executors, administrators, and assigns, all the rest, residue, and remainder of my estate, real, personal, or mixed, whatsoever and wheresoever, to hold the same in trust, for the following uses, intents, and purposes, that is to say, in trust, to keep the real estate in repair, pay the taxes thereon, collect, recover, and receive the rents, income, and issues of my said residuary estate, and apply the same when and as received as follows :

" 1. To carry into effect the provisions of a certain agreement made between me and my wife, which agreement is in writing, and a copy whereof will be found among my papers." . . . . .

Mrs. Patton elected to take against the will, and subsequently, for a consideration, released her dower.

This action was brought to recover the amount of the quarterly instalments under the agreement, from the time of the death of William Patton up to the time of suit.

The Court charged the jury :

[Patton *v.* Patton *et al.*]

" This agreement between William Patton, now deceased, and his wife, Maria Patton, the plaintiff in this case, was a personal contract between William Patton and his wife, and is not binding on William Patton's executors. I therefore instruct you to find a verdict for the defendants."

April 7th, 1881. Verdict for defendants, on which judgment was subsequently entered.

The plaintiff then took out a writ of error, and assigned as error the direction to the jury to find a verdict for the defendants.

*D. B. Meany* and *F. Carroll Brewster*, for the plaintiff in error.

The words "executors and administrators" occur in the beginning of the agreement. They need not be in the particular clause providing for the payment. If there be two clauses in a deed totally repugnant, the first is received. The construction should be on the whole deed. Patton shows in his will what his meaning was. Why were the words " executors " and " administrators " used in the deed of separation, if not for the purpose of binding the executors or administrators to pay the $400 per annum? There is no other duty or thing in the deed of separation for executors or administrators to do. Though a wife as a general rule may not be able to sue her husband, yet she can sue his executors: Dougherty *v.* Snyder, 15 S. & R., 91.

And a Court of Chancery will lend its aid to sustain a grant from husband to wife, even against third parties, where the grant is nothing more than a reasonable allowance or provision for her, made *bona fide* and for a valuable consideration: Stickney *v.* Borman, 2 Barr, 68; Lady Arundell *v.* Phipps, 10 Ves., 146; Morris *v.* Ziegler, 21 P. F. S., 450; Coates *v.* Gerlach, 8 Wr., 45; Townsend *v.* Maynard, 9 Wr., 198.

And a deed of separation, provided its object be actual and immediate, is valid and will be upheld in equity after the death of the husband, if carried into effect in good faith, and it contain nothing unreasonable in its provisions: Hutton *v.* Duey, 3 Pa. St. R., 100; Dillinger's Appeal, 35 St. R., 357; Hitner's Appeal, 54 St. R., 110.

*H. C. Thompson*, for defendants in error.

It is admitted that this agreement binds the executors of William Patton to carry out the agreement as made by him. In other words, had any default been made by William Patton in his lifetime, his executors and his estate would have been liable for the amount of such default. It is not ad-

[Patton *v.* Patton *et al.*]

mitted, however, that the widow was entitled to the payment of the $400 per annum after his death, except as she should accept the provision made for her in the will. On the contrary, it is contended that the agreement of separation was an agreement binding the parties only for life or until the marital relation was legally ended.

The agreement is that William Patton was to pay her the sum of $400 for her support. He was not bound to support her after his death. The widow of a decedent must then look to his will, or, if no provision is there made for her, to her dower. In this case William Patton did make provision for her, and that provision was to carry into effect or continue the payment of the sum of $400. That the widow, the plaintiff in error, so understood it, is evident from the fact, as stated in her testimony, that, upon receiving her dower, she considered the agreement not binding, after her husband's death, and returned or allowed to be deducted the payments which had been made to her by the executors under the supposition that she would accept the provision made for her in the will.

It is submitted upon this point that the true construction of the agreement, under the circumstances of the parties, is that it expired and ceased to be obligatory upon the death of William Patton.

Callen *v.* Hilty, 2 Harris, p. 286: "Every agreement is to be construed with reference to the circumstances under which the parties act."

McMahan *v.* Davis, 7 Harris, p. 354: "The several clauses of a contract are to be construed with reference to the main intent of the whole instrument."

Frazier *v.* Monroe, 72 Penna., p. 166: "In the construction of a contract the court cannot interpolate words not contained in it; that can only be done when it is reformed for fraud, accident or mistake." The plaintiff in error asks the Court to interpolate the words "for life" in the agreement of September.

April 1st, 1882.—Per Curiam: We concur fully in the opinion of the learned judge of the Court below, as expressed in his charge to the jury, that this was a personal contract, not binding on the executors of the husband.

Judgment affirmed.